# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:10cv110

| | | |
|---|---|---|
| **PHYLIS W. PENLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. This case is now before the Court on the administrative record and the parties' Motions for Summary Judgment [# 10 & # 12]. Upon a thorough review of the entire record, the pleadings, and the parties' briefs, the Court **RECOMMENDS** that District Court remand this case to the Commissioner for further proceedings.

## I.    Procedural History

Plaintiff filed an application for Social Security Income and Disability Insurance Benefits on October 4, 2007, alleging that she became disabled on January

2, 2001. (Transcript of Administrative Record ("T.") 90.) The Social Security

Administration denied her claim, finding that she was not disabled. (T. 53.) Plaintiff

requested reconsideration of the decision, which was also denied. (T. 57.) A

disability hearing was then held before an Administrative Law Judge ("ALJ"). (T.

27.) The ALJ issued a decision finding that Plaintiff was not disabled during the

relevant time period. (T. 26.) Subsequently, the Appeals Council denied Plaintiff's

request for review of the ALJ decision. (T. 1.) Plaintiff then timely brought this

action seeking review of the Commissioner's decision.

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she

is unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171,

176 (4th Cir. 2001). The Commissioner undertake a five-step inquiry to determine

whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.

2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether

a claimant is gainfully employed; (2) whether a claimant has a severe impairment that

significantly limits her ability to perform basic work-related functions; (3) whether the

claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform her past relevant work; (5) whether the claimant is able to perform any other work considering her age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In his May 21, 2009, decision, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 2, 2001, through June 30, 2002, the date last insured. (T. 16.) The ALJ made the following specific findings:

(1) The claimant last met the insured status requirements of the Social Security Act on June 30, 2002.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2001, through her date last insured of June 30, 2002 (20 CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairments: degenerative disk disease of the lumbar spine with history of diskectomy at L3-4, degenerative joint disease of the right knee, sleep apnea, hypertension, asthma, and more recently diagnosed B-cell lymphoma (20 CFR 404.1520©).

(4) Through the date last insured, the claimant did not have an

impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(5)     After careful consideration of the entire record, the undersigned finds that, at all times on and before June 30, 2002, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  She could not work around fumes or other lung irritants, and should not have been required to perform more than occasional postural movements.  She required the option to sit or stand at the workplace.

(6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7)     The claimant was born on July 9, 1948, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)     The claimant has no transferable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(11)    The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2001, the alleged onset date, through June 30, 2002, the date last insured (20 CFR 404.1520(g)).

(T.18-25.)

## VI.    Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  The scope of judicial review, however, is limited.  The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews  the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis[1]

### A. The ALJ's Decision does not Reflect that he Considered all of Plaintiff's Impairments

At step two of the five step evaluation process, the ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine with history of diskectomy at L3-4, degenerative joint disease of the right knee, sleep apnea, hypertension, asthma, and more recently diagnosed B-cell lymphoma. Plaintiff contends that the ALJ erred by not considering her migraine headaches and obesity as additional severe impairments.

An impairment is not severe "only if it is a *slight abnormality* which has such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation omitted) (emphasis in original); see also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999). This is not a difficult standard for a claimant to satisfy. Albright, 174 F.3d at 474 n.1.

Provided the claimant has at least one severe impairment, the ALJ must also consider the combined effect of all of the claimant's impairments, irrespective of

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

whether they are severe, in determining the claimant's residual functional capacity. 20 C.F.R. § 404.1545(e); Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit has never addressed whether the failure to classify an impairment as severe, in and of itself, warrants remand. Several courts have held that because the ALJ must consider both severe and non-severe impairments in determining a claimant's residual functional capacity, an ALJ's failure to characterize an impairment as severe does not require remand, provided the ALJ considers all of the claimant's impairments, including the non-severe impairments, at the later steps. See e.g., Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished); Swanson v. Astrue, No. 2:10cv217, 2011 WL 2582617, at *8 (D. Vt. Jun. 29, 2011) (collecting cases). In short, Pompa found that the error at step two is harmless if the ALJ discusses all of the impairments and any limitations posed by them in his or her later analysis. 73 F. App'x at 803; see also Garrison v. Astrue, No. 2:10cv619, 2011 WL 1337257, at *10 (S.D. Ohio Mar. 1, 2011). Other courts, however, have remanded for failure to consider an impairment at step two of the analysis, finding that such a failure is clear error and flaws the remaining steps of the sequential analysis. See e.g., Hair v. Astrue, No. 5:10cv309, 2011 WL 2681537, at *6-7 (E.D.N.C. Jun. 16, 2011) ("The impropriety of the ALJ's analysis of plaintiff's impairments at steps two and three necessarily invalidates the ALJ's RFC determination."); Hernandez v.

Astrue, No. CA 09-428 ML, 2010 WL 4117186, at *8 (D.R.I. Sept. 28, 2010); Fraley

v. Astrue, No. 5:07cv141, 2009 WL 577261 (N.D. W. Va. Mar. 5, 2009).

The ALJ did not include migraines in the list of severe impairments. (T. 18.)

Accordingly, the ALJ implicitly ruled that Plaintiff's migraines were not severe. Such

a finding with regard to Plaintiff's migraine headaches, however, is not supported by

substantial evidence in the record.

The ALJ noted that Plaintiff suffered from migraines and/or headaches several

times in the opinion. (T. 20-23.) Plaintiff testified that she had migraines as often as

two or three times a month. (T. 36.) Sometimes she would get these migraines at

work and have to go home. (Id.) Although she takes medication for the migraines, she

stated that she continues to suffer pain from the headaches, which can last several

days. (Id.) Sometimes she has to go to a dark room because she cannot stand the

light. (Id.). Morever, the record is replete with references to Plaintiff's migraines or

headaches. (T. 153, 159, 183, 184, 185, 235, 240, 244, 265, 273, 276, 278, 292, 296.

297, 300, 306, 307, 309, 311, 312, 318, 319, 323, 325, 334, 338, 340, 342, 343, 347,

348, 349, 365, 383, 400, 402, 404, 407, 410, 412, 414, 416, 418, 423, 424, 425, 428,

431, 432, 434, 446, 454, 467, 470, 474, 475, 476, 479, 499, 501, 502, 504, 506, 508,

510, 530, 561, 587, 590, 592, 596, 597, 598, 599, 600, 613, 615, 616.)

The uncontroverted medical records indicate that these migraines continued in

spite of the various medications she was prescribed.  (See e.g., T. 342, 343, 346, 340, 501, 599, 616.)  In fact, in January of 2002, Plaintiff reported migraines recurring once per week.  (T. 340.)  A month later she reported that the prescribed medication was not working.  (T. 334.) The medical records also reflect that Plaintiff suffered nausea and vomiting as a result of the medication she was taking for her migraines.  (See e.g., T. 334.) Although Dr. Wendy Coin referred Plaintiff to a neurologist for her migraines, the records do not reflect whether Plaintiff every saw a neurologist.  (Id.)

The record in this case does not support a finding that Plaintiff's migraine headaches were a slight abnormality that had such a minimal effect on Plaintiff that they would not be expected to interfere with her ability to work.  See Evans v. Heckler, 734 F.2d 1012, 1014-15 (4th Cir. 1984).  Again, this is not a difficult standard for a claimant to satisfy. Albright, 174 F.3d at 474 n.1; see also Stemple v. Astrue, 475 F. Supp. 2d 527, 536-37 (D. Md. 2007) ("The severity standard is a slight one in this circuit . . . .").  Accordingly, the ALJ's implicit conclusion that Plaintiff's migraines were not a severe impairment is not supported by substantial evidence in the record. This error is not harmless.  The Court cannot say what impact a determination that the migraines were severe would have on the ALJ's determination at the later steps.[2]  The Court, therefore, **RECOMMENDS** that the District Court

---

[2]  Moreover, it unclear the extent to which the ALJ even considered Plaintiff's migraines, as all of the references to migraines in the ALJ's decision related to the summary of the medical

remand so that the ALJ can consider and explain the independent effect of Plaintiff's migraines, as well as the combined effect of the migraines and Plaintiff's other impairments in accordance with the law of this Circuit.

Similarly, the ALJ did not list obesity as a severe impairment. Although, the Commissioner contends that the ALJ specifically considered Plaintiff's obesity, such a finding is not supported by a review of the decision of the ALJ. The ALJ only briefly referenced Plaintiff's height and weight (T. 20-22), in spite of the fact that the record contains numerous references to Plaintiff's medical diagnoses of obesity (T. 161, 223, 277, 297, 299, 337, 373, 400, 402, 403, 404, 407, 408, 410, 412, 414, 416, 418, 424, 481, 509, 571, 586, 587, 589, 590, 592, 596, 598, 599, 600).

Although obesity is no longer contained in the Listing of Impairments, Social Security Ruling 02-1p recognizes it as an impairment that must be considered at several stages of the sequential evaluation process. "As with any other medical condition, we will find that obesity is a "severe" impairment when alone, or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work

_____

record. It does not appear that the ALJ considered whether Plaintiff's migraines separately, or in combination with her other impairments, rendered her unable to engage in substantial gainful activity. See Walker, 889 F.2d at 49-50 ("the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."); see also Woodley v. Astrue, No. 1:09cv2026, 2010 WL 5136207, at *15-16 (D.S.C. Nov. 10, 2010); Davis v. Astrue, No. 1:10cv1429, 2011 WL 1832707, at *14-15 (D.S.C. Mar. 31, 2011).

activities." SSR 02-1p. This determination requires an individual assessment of the impact of the claimant's obesity on his or her functioning. Id. In spite of the fact that the medical records reflect a diagnoses of obesity, the ALJ failed to address Plaintiff's obesity in his decision.

The Commissioner, however, contends that even if the ALJ did not consider Plaintiff's obesity, this error does not require remand because it will not effect the outcome of this case. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3rd Cir. 2005); Forte v. Barnhart, 377 F.3d 892, 896 -97 (8th Cir. 2004); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). Although the Court might be inclined to agree with the Commissioner that remand would not be required solely for the ALJ to consider Plaintiff's obesity in this case if this was the only error in the decision, because the Court finds that this case should be remanded on other grounds, the Court **RECOMMENDS** that the District Court remand the case to allow the ALJ to make more specific findings, consistent with SSR 02-1p, as to Plaintiff's obesity.

## B. The ALJ's Credibility Determination is not Supported by Substantial Evidence in the Record

Plaintiff contends that the ALJ's residual functional capacity determination is flawed because the ALJ failed to properly take into account her complaints of pain. In short, Plaintiff contends that the ALJ improperly evaluated her credibility.

It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the credibility determination of the ALJ is supported by substantial evidence. Id. In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonable be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's

medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ's credibility determination must constitute more than a conclusory statement that the claimant's allegations are not credible. SSR 96-7p. The decision must contain specific reasons for the finding and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

Although the parties focus on the second prong of the analysis, the ALJ

determined that claimant failed to satisfy the first prong. The ALJ's decision states

that, "[t]hus, after careful consideration of the evidence, the undersigned finds no

evidence that the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms." (T. 23.) There is simply no other way to

interpret this specific finding of the ALJ as anything other than a finding that Plaintiff

failed to satisfy the first prong. Such a finding, however, is not supported by

substantial evidence in the record. The objective medical evidence in the record

reflects that Plaintiff's various medical impairments, including migraines, asthma,

degenerative disk disease of the lumbar spine with history of diskectomy at L3-4, and

degenerative joint disease of the right knee could reasonable be expected to cause the

symptoms and pain to which Plaintiff testified, mainly pain in the hips and knees (T.

32-34), difficulty breathing (T.38), and headaches (T. 35-36). Accordingly, the Court

**RECOMMENDS** that the District Court remand this case to evaluate the intensity

and persistence of Plaintiff's pain, as well as the extent to which Plaintiff's symptoms

and pain impact her ability to work.[3] 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at

595. The ALJ should specifically consider those factors listed in 20 C.F.R. §

---

[3] Although the ALJ also noted that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible, presumably based on her testimony regarding her activities in daily life (T. 23-24), based on the ALJ's finding that Plaintiff did not satisfy the first prong, it is unclear whether the ALJ properly considered *all* the available evidence and made a proper determination under step two.

404.1529©.

## C. The ALJ Erred by Posing Improper Hypothetical Questions to the Vocational Expert

Plaintiff also challenges the testimony of the vocational expert testimony. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [a] particular claimant can perform." Walker, 889 F.3d at 50. Not only must the opinion of the vocational expert be based on all the evidence in the record, but "it must be in response to proper hypothetical questions which fairly set out all the claimant's impairments." Id.; Hines, 453 F.3d at 566; Riley v. Chater, 57 F. App'x 1067 (4th Cir. 1995) (unpublished).

Here, the ALJ asked four hypothetical questions. The first three questions, however, failed to mention Plaintiff's impairments, as required by Walker. (T. 43-44.) The ALJ did not mention Plaintiff's migraines, obesity, degenerative disk disease, degenerative joint disease or the specific limitations imposed by her impairments.[4] Instead, the ALJ asked the vocational expert to assume that the "[p]erson can do light work, occasional posturals. Avoiding fumes, respiratory irritants." (T. 43.) This questions is insufficient to ensure that the vocational expert was aware of all of

---

[4] Although the ALJ did not specifically mention Plaintiff's asthma, the hypothetical accurately reflects the work related limitations of Plaintiff's asthma.

Plaintiff's abilities and limitations.  See Riley, 57 F.3d 1067 (unpublished) (holding

that responses to similar question cannot support substantial evidence to support the

decision of the ALJ); Burkhart v. Apfel, No. H-98-1725, 1999 WL 33136051, at *13

(D. Md. 1999); cf. Johnson 434 F.3d at 659 (holding that hypothetical question

including a residual functional capacity for light work *and* separately set forth each

of the claimant's impairments adequately reflected the claimant's impairments). As

the Fourth Circuit explained in Riley, "[t]he exact nature of Claimant's limitations that

relegated him to 'light work' was undisclosed, and, thus, we have no way of

determining whether the VE recognized all of claimant's disabilities." 57 F.3d 1067.

On remand, the ALJ must present a hypothetical to a vocational expert that properly

incorporates all of the claimants impairments, as required by the Fourth Circuit in

Walker.


**D.    The Additional Evidence Submitted to the Appeals Council does not Require Remand**

Plaintiff contends that the Commissioner erred by not considering the additional

evidence she submitted to the Appeals Council regarding her lymphoma. This

additional evidence constitutes treatment records for the Cancer Centers of North

Carolina. The Court has reviewed all of these additional records.

In determining whether to grant review of the ALJ's decision, the Appeals Council must take into consideration new and material evidence that relates to the period prior to the decision of the ALJ, even if it declines to review the decision. Wilkins v. Sec., Dep't of Health and Human Servs., 953 F.2d 93, 95 (4th Cir. 1991). Accordingly, the Appeals Council must consider additional evidence that was not submitted to the ALJ when the evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the decision of the ALJ. Id. at 95-96. "Evidence is new within the meaning of this section if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable probability that the new evidence would have changed the outcome." Id.

As a threshold matter, Plaintiff's contention that the Appeals Council failed to consider this additional evidence is without merit as the Notice of Appeals Council Action states that it "did consider additional treatment notes from the Cancer Centers of North Carolina that were submitted by your attorney." (T. 2.) The Appeals council admitted the new evidence into the record. (T. 6.) The Appeals Council, however, concluded that these records relate to the treatment of an impairment that developed after Plaintiff's date last insured, and denied review of the ALJ's decision. (T. 1-2.) Because the Appeals Council incorporated the additional evidence into the

administrative record, the Court must review this evidence when determining whether

substantial evidence supports the Commissioner's findings.  Wilkins, 953 F.2d at 96;

Daniels v. Astrue, 564 F. Supp. 2d 536, 538 (E.D.N.C. 2008); King v. Barnhart, 415

F. Supp. 2d 607, 612 (E.D.N.C. 2005).[5]  Upon a review of these additional medical

records, the Court finds that nothing in these records warrants remanding this case for

further consideration above and beyond the reasons previously discussed in this Order.


## VI.    Conclusion

The Court **RECOMMENDS** that the District Court reverse the Commissioner's

decision in this case pursuant to Sentence four of 42 U.S.C. § 405(g) and remand the

case to the Commissioner for further proceedings consistent with this Order.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section

636(b)(1)©, and Rule 72, Federal Rules of Civil Procedure, written objections to the

---

[5] The Commissioner's contention that the Court cannot consider this evidence when determining if the decision is supported by substantial evidence (Def.'s Br. at 22)  is misplaced as the case relied upon by the Commissioner addresses the  situation where a plaintiff submits additional evidence to the district court not the Appeals Council.  Compare Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996) with Wilkins, 953 F.2d at 96.  In fact, the Commissioner has taken the opposite position in other proceedings.  See e.g. Barton v. Astrue, 495 F. Supp. 2d 504, 507 (D. Md. 2007).

findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: September 19, 2011

Dennis L. Howell
United States Magistrate Judge